City of Dallas v. Delta v. Southwest, and we'll hear first from Mr. Pinker. May it please the Court. Eric Pinker for Southwest Airlines. The Right Amendment Reform Act makes Love Field unique by strictly constraining capacity to 20 gates. WARA addressed that constraint in several ways, by stating that the scarce resource provisions of the lease would control, by stating that the leases shall be deemed to comply with the grant assurance obligations set forth in Title 49, and by stating that the grant assurances shall not be construed to modify the preferred gate leases. Where does it say that? It says that in WARA, Your Honor. Specifically, the part about deemed compliance is in Section 5D, Subpart 2, and the part about how grant assurances cannot be construed to violate the lease provisions is set forth in 5E, Subpart 2B, Little Romanette II. For its part, in connection with WARA, Southwest gave up gates at Love Field and the ability to expand to DFW and invested hundreds of millions of dollars in the rebirth of Love Field. It did that all in reliance on WARA's assurance that its preferred lease rights would be protected. The inescapable result of WARA is what Delta conceded in its brief. On accommodation, all roads lead to the lease. That lease is unambiguous and explicit. It states on multiple occasions that Southwest has priority for the use of those gates and has precedence over the rights of others. A preferential user, but not the sole user. Is that right? Preferential user, so its rights has precedence. Others can be accommodated if and when and as long as space is available, but certainly not indefinitely, and in no event can that accommodation have rights superior to the preferred leaseholder. Now, the five-party agreement says that requesting airlines shall be accommodated, doesn't it? The five-party agreement does say shall be accommodated pursuant to the terms of the lease. So you read them together. Is that right? Absolutely have to read them together, and WARA dictates that everything done in the five-party agreement and everything necessary in order to implement that complies with WARA and federal law and must be given heed. Here, all of the operative language refers us back to the lease and says accommodation shall be done, if at all, in accordance with the terms of the lease. Again, that lease provides priority and precedence to Southwest. Now, the request for an accommodation was first made in June. Is that right? I believe it was first made, Your Honor, in July, and then it was reiterated and made by the city in September. There's little dispute it was certainly in the summer time frame of 2014, and I'd hasten to add that time is very important because it comes simultaneous with the lifting of flight restrictions at Love Field. As the trial court observed, everybody knew that Southwest Airlines would be ramping up. They were already advertising it. Precisely, Your Honor. They were advertising it 12 months in advance, as I recall. Precisely, Your Honor, and there's evidence in the record, and the judge acknowledged that. And so we have a situation where the restrictions in the Wright Amendment flight and capacity and utilization opportunities were being lifted. Southwest had loudly and publicly stated it intended to ramp up, intended to do so in an orderly and safe fashion, and in that context, Delta, which at the time had simply been a month-to-month sub lessee at Americans Airlines, at the time, Delta then asked for an accommodation. But anyway, from June until November, Southwest did have space that they could accommodate Delta with, did they not? Well, for that limited period of time, they would have had space, but Delta was already operating first under a sublease with American during that time and later under a sublease with United during that period of time. So during that early 2014 period when there would have been space available, Delta had space available to it to fly its planes pursuant to existing and then subsequently signed sublease agreements. Delta was always accommodated or given space at the airline through the filing of this lawsuit in June and July of 2015, at which point in time, obviously, as the Court is well aware. Well, Delta would like to have its own lease space rather than depend on a sublease, had it not. Well, I would submit to the Court that it doesn't. Delta chose not to be part of the five-party agreement. Well, that's my question. How could Delta have become part of the five-party agreement? It wasn't at Love Field at that time, was it, in 2005? I do not believe it was operating at that time. It began in 2009 under a month-to-month lease. To answer Your Honor's question. Under Expressjet or American? Under American at the time. But to answer your Court's question, at a minimum, it could have participated in the public hearings in connection with evaluating the five-party agreement and adopting WARA. You don't think that Delta was behind the scenes when they had that congressional hearing on WARA and somebody was saying, well, what about accommodating other airlines or something like that? They very well may have been. They very well may have been. There's not evidence to that effect. But I think the Court can clearly conclude that they did not choose to have a lease relationship with the city. They did not seek to have a direct lease relationship with the city and really were not in any manner interested in operating at Love Field until 2009 when they began to have a small number of operations there. They have not been involved in the process to create what Love Field is today. They did not choose to be part of the five-party agreement. They did not choose publicly to be part of the adoption of WARA. Let me ask you if Delta's, well, my first question is this. If Delta's a third-party beneficiary of this contract, why isn't JetBlue or Alaska Airlines or Spirit Airlines or, you know, any other airline that wanted to come into Love Field? Well, I think the Court's question is entirely correct. That's one of the many problems with the claim. Under Delta's theory, a wide range of unidentified entities, some of which exist today and some of which haven't even been created yet. Well, a new entrant would mean anybody, if it just means anybody who wasn't at Love Field at the time, then I don't see why they couldn't just nibble away systematically at Southwest Gate. Precisely. And Texas law is very clear and very demanding that to be a third-party beneficiary, there has to be a clear intent to identify that party as a beneficiary and to allow that party to enforce the contract. No such clear intent exists here. And I submit to the contrary, there are a number of provisions in the contract, as we've set forth in our brief, that stand in opposition to that notion, namely the no third-party beneficiary provision of the five-party agreement, the fact that the city is set forth as the arbitrator of rights under accommodation, the absence of any mention of Delta whatsoever. And I would like to add here, this is an area where the district court's error is perhaps most pronounced and really is not even defended by Delta. The district court found that Delta was a third-party beneficiary because Section 4.06 in the district court's view gave Delta accommodation rights. Texas law is absolutely clear, and we've cited a number of cases, that the obligation that must exist in order to create a third-party beneficiary must be preexisting and separate and apart from the contract for which the person is trying to seek third-party beneficiary rights. I read your cases on that, and I didn't see any language in those cases that said that. Well, the language in the cases talks about preexisting obligation, Your Honor. Taz and Maddox are probably the two cases we rely on. The condominium case seemed to me like the obligation there was in the very contract that was being sued on. Well, there has to be a preexisting obligation for a party to be more than what Texas law refers to as an incidental beneficiary. Well, Texas seems to have adopted the restatement, and I don't see anything in the restatement that requires that. The restatement, second, has stopped referring, using the terms creditor, donee, and incidental beneficiary, but Texas still does. Texas, and we've cited the Allen case from 2010, Dallas Court of Appeals, which still follows that language. Ultimately, Judge, without attempting to necessarily pigeonhole us into a creditor versus incidental discussion, Texas law requires that there be a preexisting obligation to that person and that there be an intent by the parties to the contract, here Dallas and Delta, an intent to benefit that third party and give that third party enforcement rights. Here, the real problem — You don't have to name the party, though, for him to be a third-party beneficiary as long as you designate him. He can be identified. Isn't that right? You would have to identify them with sufficient specificity. Like a new entrant airline? I think that's inadequate, not adequate, because it's an ever-changing designation, Judge. It could involve airlines that exist today, new airlines that are created, merged entities. This is a changing dynamic industry, and to simply refer to new entrants, whoever they might be, is, I submit, inadequate. You went to a lot of trouble in the lease to set up a procedure for a new entrant airline to get accommodated. I mean, is all that just for nothing? It's not for nothing. It is in order to allow the city of Dallas to operate its airport to ensure that its airport is being properly utilized. And there is no contention here that Southwest is doing otherwise. Southwest fully uses its gates. It would like to use them more, and it struggles to use them to the maximum. Let me ask you my question about this accommodation clause, because, you know, assuming that this has to be consistent with not unduly interfering with Southwest's operating schedules on reasonable terms, when you get down to paragraph F4C, going through the requirements of what the city has to do to implement the accommodation provision, it says that the city can force, basically force Southwest to render, to regard acceptable fees and charges or any other matter regarding the scarce resource provision, including but not limited to 406F4A above, which has to do with conflict between the schedules of the signatory and the requesting airline. So they can force an accommodation of Southwest's schedule for the benefit of a requesting airline. Is that not right? Well, the lease does give the city the ability to select a signatory airline, Southwest, and to force an accommodation subject to the priority and preference rights that Southwest has in the lease. It's important to note, obviously, and we've argued in our brief, the city has not made any such accommodation order here. Well, I understand that, but leaving aside – suppose it did. Obviously, Southwest would comply with any lawful order by the city and would evaluate its rights. My question is, when the city has – does that mean that the whole implication of this is that Southwest may have to make room in its schedule for another requesting airline? Well, the answer is it may, depending on whether that would result in an undue interference as set forth in the introductory language of Section 4.06F. And that's why the standard that you're reading from would, in our opinion, require a good-faith, non-discriminatory decision by the city, consistent with our priority rights and without undue interference. But that's a long way of saying, yes, Your Honor, the city has the ability to make decisions for accommodation under this lease and has not done so. It is our view that by giving the city that opportunity, in answer to Judge Davis's question, it serves a purpose, which is to ensure that the airport is not sitting idle and that gates are not being wasted. But in this case, there's no suggestion that that is the case. Is one object to have more competition at Love Field? Well, there's competition and non-discrimination provisions within the grant assurances. But, again, those grant assurances and those competition ideas by Federal statute WARA cannot take precedence over the lease. The lease controls, and it's important to understand, that is part of a carefully crafted congressional statute that balances the competing rights of many parties, recognizing that there's 165 gates 15 miles down the road at DFW. How many does Delta have? I can't answer that. They have a substantial presence, but I can't quote to you the number, Your Honor. They have a substantial presence, and most importantly, there is no constraint at DFW. DFW, and the evidence is clear, can expand the number of gates. No constraint except on Southwest. Except on Southwest, precisely. I mean, Delta can expand to their heart's content at DFW by dividing gates, adding new gates, adding hard stands. Southwest is the only airline that is constrained in the Dallas-Fort Worth market. It's constrained as a result of WARA, which said it had to give up gates. It cannot expand to DFW without giving up gates. And it is constrained now, additionally, by the district court's decision, which enjoins it from fully using its own gates. I see that my time is up. I'd be happy to answer additional questions. Let me ask you a question. Congress said that airlines needed to make some agreement about these gates, and so in 2006 you made this very significant agreement, which now binds. What is there in the prior leases or whatever of Southwest? Because Southwest made Love Field, and we know how popular it is now, for good reason. What is there that would override anything in the 2006 agreement? There's nothing that would override anything in the 2006 agreement. Those agreements control pursuant to the terms of WARA, and those agreements say clearly that Southwest has priority and precedence over others. I hope that I've answered the court's question. Okay. Thank you, sir. Thank you, Your Honor. Mr. Haskell. May it please the court, Peter Haskell for City of Dallas. The court should affirm the preliminary injunction in favor of the City of Dallas, and if the court does this, it will be unnecessary to have to deal with all of the questions regarding Delta's rights standard. Well, let me ask you your question, because the City of Dallas is like Pontius Pilate here, and the city is getting, you know, I don't doubt that pressure was being put on by both sides, but Delta fired the first shot. Did they not, going into federal court? No, Your Honor. The city did, Your Honor. The city was the first to file? Yes, Your Honor. Yeah, that's right. You were the stakeholder, alleged stakeholder. Well, suppose Delta is not a third-party beneficiary. Then why does the city still have a problem here? Should not the case be at least remanded, if not indeed dismissed, as to the city's request? Because if Delta is not a third-party beneficiary of the contract, then it stands in the shoes of a requesting airline. If Delta were the only party asserting permanent rights to Luffield Gates, the court might have a point. However, DOT, Department of Transportation, and the FAA have been carrying Delta's water here, and even though just—excuse me—while represented by Justice, Department of Transportation withdrew earlier guidance. They threw the kicker into this works by unprecedentedly, if I can use that term, insisting that any accommodation be essentially permanent so long as Delta maintained a pattern of service. Well, then you should have brought them in and sued them, too. We did, Your Honor. We have. Where are they? They did not cross-appeal on this preliminary injunction. What did the judge rule on that? I don't— The judge—excuse me, Your Honor—the judge did not address the city's claims against FAA or DOT in the preliminary injunction. But again, if we hold that Delta's not an intended beneficiary, that puts your claim in an entirely different light. You can go fight it out somewhere else if you want to with DOT. Your Honor, we would—if the court were to do that, the city would pursue its claim for injunctive relief and declaratory relief against the FAA and DOT. And yes, of course, it changes the dynamic of the case, absolutely. I mean, the lease still provides that you have all this procedure set up. When a requesting airline comes in and makes a request for space, that seems to require the city to take some action on it, doesn't it? No, Your Honor, it does not. The mandatory language in 4.06F is all preceded by the preface that the city may accommodate or order accommodation. Everything else, all of the mandatory procedures are if the city decides to accommodate. For example, Your Honor, as cited in the brief by the city, the city has the obligation to perform gate maintenance. In many instances, it might be a very good time if a gate is not being fully used to perform those duties so as not to interfere with operations. Even more to the point, there is nothing in the lease, even if we were required to do accommodation orders, requiring us to honor the request from the first to request. In other words, to improve competition, to get a better service mix, the city could solicit requests from any other airline that might be interested in serving Love Field. There is nothing giving any right whatsoever in the city's view to any airline that happens to have made a request. That certainly gives the city reason to examine the situation but does not give the requester any statutory or lease right. I mean, wouldn't you need a reason to turn them down? I mean, could you just arbitrarily do it? The city would not act arbitrarily, of course, but yes, there are reasons, such as a better service mix or the need to perform maintenance. There might be others as well, Your Honor. But no, the city does value competition. The Congress has given Southwest a dominant position at Love Field. As has been observed today, Southwest has made substantial investment in developing Love Field, so it is not an inequitable congressional decision, even if that were the case. Well, so the point is that Southwest is using the entirety of all the gates there, is it not? No, Your Honor, there are two gates that Virgin America still uses. Okay, but fine, all but two of them, and they have a legal right to do that at the present time. And why would the city, given the undue interference provision, why would the city try to force Southwest to move over for somebody else? The city would not unless DOT and FAA, or of course the court, forced us to on a permanent basis.  My question comes when your time is up, it looks like, to Eric. I read these briefs a month ago. I read the two J filings. I don't understand why, when you say in your brief, we want to affirm the trial court's judgment, when you come here representing the city and say the trial court's got it right, I don't know why you haven't decided the thing under the 2006 agreement. Dallas has now approved and accepted and urged us to make that resolution that the district court made, but you've accepted it and argued for it. Why doesn't that do it? No, Your Honor, it does not, because first of all, the city requested several brands of relief in the alternative. If on remand the court were to issue an injunction favoring Southwest. Oh, I read your conclusion, but I also read the introduction of your brief, and you wanted to affirm that. You've made your decision. You've made your approval. If I may, Your Honor, we have not. The injunction is by definition temporary. In the city's view, any accommodation decision would be temporary until the preferential, the carrier with the preferential game rights. There's no lease. Delta's not operating under a lease, are they? No, Your Honor. And under that provision, Southwest would have to enter into a sub-lease with Delta, would it not? Unless the city. Unless you took it from Virgin. Or, yes, Your Honor. The problem we have is DOT and FAA, which although they backed off their initial quote-unquote guidance, have now launched an administrative investigation which risks city losing funding if it doesn't provide permanent accommodation. Now, that's a separate fight. It is, Your Honor. Well, but if the city agrees that this injunction should have been entered and so Delta should be accommodated, then how is that carried out? Don't you then require Southwest a sub-lease or do they get their own lease or what? Frankly, Your Honor, that hasn't been fully developed because right now we're operating under an injunction, not under contract. That's nonsense. You have a contract. Judge Kincaid didn't say anything detrimental to the existence of the contract, and therefore, although he did make his interpretation of the contract, there is still the idea that someone has to execute a lease with Delta. They can't just squat there. Well, unfortunately, Your Honor, that's exactly the situation. They're paying. I am not aware that there is. And the city is happy about that? The city is happy with peace, order, and continuity of operations until we can get judicial clarification of the city's rights and obligations. I know we're not supposed to mention the Bible, but Pontius Pilate comes quite much to mind here. If I may, Your Honor? Yes, sir. Although the city has been criticized for going to the court, I believe it was Judge Kincaid who accused us of throwing up our hands, a different metaphor but the same idea. Isn't that precisely, the city believes it is precisely the purpose of declaratory judgment to get and seek judicial clarification before there's a breach of the peace, as Delta threatened to impose, before the city gets sued with potential for substantial damages? That might have been possible if the city, if Delta is an intended beneficiary. Or if, as happened, Your Honor, DOT and the FAA. Well, they're not parties to this suit. Yes, they are, Your Honor. You've already admitted it's a separate issue. It is, Your Honor, but they are definitely parties. They are defendants. We have sued them for declaratory and injunctive. That doesn't mean that the city, well, I don't want to argue, the city can go back and enforce its, act like a man, so to speak, and apply the contract. And then if DOT and FAA still object, then you can go to court with them. Your Honor, so long as an injunction is in effect, so long as Judge Kincaid keeps jurisdiction over the controversy, the city is not about to do anything without going to Judge Kincaid, and at the very least, making sure he has no objection to what the city might do. Well, I hope you make sure we have no objections. Absolutely, Your Honor. Thank you. Thank you, Your Honor. Okay, thank you, Mr. Haskel. Yes, sir. All right, Mr. Falconer. Good morning. Whether or not you're entitled to be a beneficiary, what do you think about the way I read the 2006 argument contract? The five-party agreement, the 2006 contract, requires Southwest and the city to abide by the accommodation provision in Southwest's airport lease agreement. And the accommodation provision in that lease agreement is the provision Delta is here to enforce. The district court entered its… Did you hear what I asked, Mr. Haskel? I understood your question to be, do we agree that the five-party agreement, the 2006… Aside from what Delta gets or doesn't get, did you hear my question, Mr. Haskel? I fear I may not have, Your Honor. I apologize. My question was whether or not the effect of his being here and his brief was that he decided as the district judge decided. That's what the city's position is. That the city has decided… It's over. The city has agreed and followed 2006. No, the city has not complied with the 2006 five-party agreement. They agreed in their brief that the injunction was properly entered against them. That's correct, Your Honor. That's right. And that is the sort of simplest way to affirm the injunction without reaching the issues that Judge Jones has discussed, that the district court made an explicit finding of fact that there is no undue interference with Southwest's current schedule of 180 flights from Delta's current schedule of five flights. The lease requires Southwest to provide accommodation, if it can do so, without undue interference. Well, but you know very well that the section… Well, I certainly personally take issue with Delta being a beneficiary, but you're the only one who's briefed… Actually, the city agreed with that. Right, and I'd like to address that issue if I can, Your Honor. Texas does still use the creditor-beneficiary framework, and under that framework there's a two-part test for determining whether Delta is a creditor-beneficiary. Does Southwest promise performance to Delta, and does that promised performance satisfy a legal obligation? It didn't promise performance to Delta. It promised performance to the city of Dallas regarding accommodation for a, quote, new entrant. Now, Delta's about as much a new entrant as United or, as I said, Spirit or Alaska or JetBlue. So why does Delta get the benefit of that? Why couldn't any of these other airlines come in under this provision, according to your interpretation, and nibble away gate by gate at Southwest? I'd like to answer that in two parts if I can. The first part is the Section 4.06F defines the beneficiary of that provision as a requesting airline, a new entrant airline who has actually made a request to serve the airport. JetBlue, Spirit, the other carriers have not made a request. They do not currently qualify as requesting airlines. Could they in the future? Yes. Would that allow them to nibble away at Southwest gate rights? Absolutely not, and that's because of what the text of the lease says. Southwest only has an obligation to provide accommodation at times that do not unduly interfere with its operating schedule. Right now there are 185 flights on the 18 gates that are leased or subleased to Southwest. If JetBlue came in and asked for accommodation for 10 flights, the lease does not require Southwest to cancel its existing flights to accommodate those flights. That's the benefit of its preferential use right that they talked a lot about in their brief. They have preference to maintain their existing schedule, so there's no risk. Delta has never argued that a carrier could come in once the airport is full and push Southwest out. This accommodation provision is about filling unused space. Well, let me ask you a question. They do have a preferential right to all of these gates in question, and you only want five flights a day, right? That's all that's at issue on this appeal. That's correct. Exactly. So what you want to do is you basically want to take a whole gate, because if there is one thing that is clear in this agreement, it is that gates cannot be subdivided, right? So basically Delta is trying to do the same thing that it accuses Southwest of doing, which is get a toehold in and then take over a gate. No, Your Honor. I want to make sure that the use of subdivision is clear. That refers to when gate 31 at the airport is split out into A and B. It doesn't bar two carriers from operating on the same gate. So in that sense, the gates can be shared between more than one carrier. Well, but it does present problems, because if Southwest has a flight going out at 8 a.m. and Delta has a flight going out at 9 a.m., then you've got to change all – there's a lot of orchestration that's got to go on for baggage handling and passenger check-in and so on, isn't there? That's correct. And ultimately, there could be an impact on the efficiency of the operation and even on safety. There could be. The district court made explicit findings of fact that there have not been, that Delta's five flights do not unduly interfere with Southwest's operating schedule. That finding is at page 6190 in the record, and that finding is essentially sufficient to support the preliminary injunction. Whatever the lease means, we know what it says. Southwest agrees to accommodate a requesting airline at times that do not unduly interfere with its operating schedule. Well, is it your position that you – if you are correct, is it your position that you never have to enter a lease with Southwest? No, absolutely not, Your Honor, and two points on that. One is we've offered to sign a sublease with Southwest, and they've turned us down. Our operations at the airport are under a short-term use and license agreement.  If the city was willing to lease Delta a gate, we would sign a lease and assume the burdens and obligations of a leaseholding carrier. That's a key part of our basis. Who are you paying now, then? My understanding is that we pay an actual cost to Southwest, a proportionate share for one of its lease gates. That's the compensation structure that's required under the terms of the city's competition plan. And that's at page 8582 of the record, that Southwest, as a leaseholding carrier, can recover all of its actual lease costs as well as an administrative fee of up to 15% of its actual costs. So that's the terms of the economics between Delta and Southwest. I also want to return, if I could, to the third-party beneficiary inquiry to make sure I've addressed any open questions on that. I'd like to refer the Court to two cases on this issue of what about the fact that membership in this group is not fixed. In the future, other carriers could become requesting airlines if they made a request. The city of Houston case from the Texas Supreme Court found that a contract between a firefighter's union and the city made creditor beneficiaries out of the members of that union who were identified only as employees. Now, a union's membership changes all the time. New employees are hired, old employees retire. That membership is in flux and dynamic, just like the category of requesting airline is. The Texas Supreme Court said as long as the agreement describes the members of the group with sufficient particularity that we can figure out who's in the group at the time enforcement is sought. How many air carriers are registered for commercial purposes in the United States? This isn't in the record. My understanding is the number is 119. Exactly. In the city of Houston, there were 540 firefighters in that union. Well, that's fine, but I don't think commercial air carriers are comparable to firefighters working under one employer. But the difference between that case and this is that was 540 actual beneficiaries. That was an individual. This is, Judge Jones, unless an airline has made a request. You can't point to any. I mean, there are gas pipeline cases, and I'm sorry I didn't look them up. But normally nobody is an intended beneficiary of a pipeline agreement because there are all these different separate commercial entities with separate interests, blah, blah, blah. So I just think it would be a travesty of third-party beneficiary law to say that Delta is a third-party beneficiary here. Again, Delta is a creditor beneficiary as a requesting airline. They're not a creditor of anything. Could not Delta have intervened in the five-party agreement? No, Your Honor. Delta was not invited to participate in those contract negotiations. Let me ask you. The five-party agreement specifically says that a requesting airline is not a third-party beneficiary. Then the lease is designed to implement the five-party agreement. So why is that provision not read into the lease? For two reasons, Your Honor. One is the provision of the lease that says it's designed to implement the five-party agreement actually says it's designed to implement the five-party agreement with respect to gate use. What does a five-party agreement say about gate use? Enforce the accommodation provision of the lease. The other point is this lease incorporates other documents by reference. It incorporates all the grant agreements by reference. It does not incorporate the five-party agreement by reference. Well, every single one of the whereas clauses are dependent on the five-party agreement, so it just seems to me it's difficult to disentangle the two. Right. I agree. And the fact that the Southwest and the city in 2006 included a disclaimer of third-party beneficiary clause in the five-party agreement, and then three years later when they signed this amended lease, they did not include a disclaimer of third-party beneficiary's clause in the lease. I think that shows that there was not the same intent to foreclose third-party enforcement that there was under the five-party agreement. Well, the five-party agreement divided up the market. Delta has how many gates at DFW? That's also not on the record. I believe it's six.  I believe that's correct, Your Honor. I thought they used to have most of a concourse. Their presence was heavier in the early 2000s. It's scaled back since then. Again, I'm going off memory. I don't want to mislead the Court. That's my best recollection. Well, it shows it's an oligopoly in any case. But Southwest was, A, required to turn over one-third of its gates and do away with them out of Dallas, and, B, if Southwest ever tries to go into DFW, it has to give up one gate at Love Field for every gate that it's going to get at DFW. Now, this strongly implies, contrary to somebody mentioning competition, that the competitive market is viewed as both Love Field and DFW, and, therefore, that Southwest should have been the principal beneficiary of the Love Field agreement. Love Field certainly is a beneficiary of both the lease and the five-party agreement. No, Southwest is the—Southwest, you mean. Did I say it? Southwest is the principal beneficiary. The five-party agreement does not require Southwest to give up gate space at Love Field if it wants to operate at DFW. All it has to do is go from preferential-use leases to common-use service. Exactly. Southwest can stay at both airports. There is no requirement that if it operates out of DFW, it is kicked out of those gates at Love Field. But it has to give—well— It gives up its preferential-use rights, and it accesses on a common-use basis, which is the standard at most airports in the United States. That's not second-class status. Well, but they did give up—well, you can argue, but that's not the same as Southwest can't be a requesting party to go into DFW, correct? Southwest is absolutely free to go into DFW. But you're contending that Delta can be a requesting party to go into Love Field. If Southwest wanted to provide service at DFW, it would be a new intern at DFW and would have the same right to accommodation that Delta has at Love Field. No, it's not. All right. Don't get yourself tangled up. Right. And, well— Never mind. I'll back away and just come to this point, that Southwest has not identified a single case in its briefing where one party of the contract owed a duty to the third party, and the other party of the contract promised to satisfy that duty, and that third party was not a creditor beneficiary. The city owes a federal access obligation to requesting airlines such as Delta to provide reasonable access to Love Field. Subject to the terms of the lease. Right. By implementing the terms of the lease. Let me ask you this. What do you say to Southwest's argument that the scarce resource clause doesn't apply until the city orders Southwest to accommodate Delta? That's not true because the text of the lease just doesn't say that. The text of the lease says Southwest agrees to accommodate a requesting airline. It does not say Southwest agrees to accommodate on the condition that the city issues a forced accommodation order. No, it says if it's unwilling or unable, and which it is, then the city steps in and the requesting airlines goes to the city, which has discretion whether to implement that. Right. And that's an important point that I wanted—this isn't in our brief that I wanted to make sure I said today. The city and Southwest both say we don't have an obligation under Section—the city doesn't have an obligation under 4.06F. It's a discretion. It has a qualified right. I want to refer the court to Section 14.19 of the lease, where the city agrees to exercise its rights here under in a manner that's consistent with Title 49, FAA regulations, and the grant assurances. Now, no one has—neither Southwest nor the city has argued that those federal obligations give the city any discretion over whether to order accommodation. The Department of Transportation's June 15th letter, that's at tab 2 of our record excerpt, says explicitly the city is obligated to force accommodation. Whatever discretion it might have under that May language in 4.06F.3, 14.19 fills that gap and says you have to exercise that discretion. But it also—but the lease also says it has to be consistent with all other agreements, which includes—I mean, all other laws and so on, which have to include WARA. That's correct. And WARA says follow the lease when you're making accommodation decisions. But let me ask you a question. If you're saying—if you're not a third-party beneficiary and you do claim to the benefit of these federal laws, apart from WARA, why didn't you go through the FAA administrative process? The FAA initiated its own administrative action last August. I know, but why didn't you? Because the FAA is making all the arguments that DELTA would have made. I mean, but the FAA ain't here, and it seems to me there's a big argument about primary jurisdiction, or at least what we used to call primary jurisdiction, when you've got a regulatory agency that may have some kind of overarching duty here that the private party has to go to them before it goes into court. There is a case to be made for an exercise of primary jurisdiction in this court's discretion or in the district court's discretion as long as the preliminary injunction preserving the status quo is left in place. And on that point, I want to emphasize one other piece of the record. This is on pages 6914 to 6920. Southwest Vice President of Airport Affairs Bob Montgomery testified that Southwest is running 180 flights per day right now. It has no intent to expand. It has no plans to add more flights in the future. So we know that Southwest is running all the flights it wants to run right now. We also know from Judge Kincaid's finding at page 6190 there is no undue interference with that slate of flights. Those findings are sufficient to sustain the preliminary injunction. If the court wants to refer the case to the FAA under primary jurisdiction, Delta has no objection to that as long as the status quo is preserved during the pendency of that proceeding. And the district court made findings that disinjunction preserving the status quo is both essential and harmless. It's essential because if Delta is forced to leave Love Field, it will effectively be barred from coming back in. The district court or the FAA at the conclusion of those proceedings, if they were to find in Delta's favor, would not be able to fashion meaningful relief because of the commercial barriers to Delta reestablishing its presence at Love Field. That's what the judge found, but if there is a primary jurisdiction argument, then the judge is taking over the FAA's responsibility, it seems to me. Could the FAA have ordered a preliminary injunction? The FAA does have authority to issue interim orders under its Part 16 jurisdiction, and the FAA has been the plaintiff in that case, and the FAA has essentially stayed that proceeding pending the outcome of this proceeding. So there's mutual deference. Oh, there's Pontius Pilate all over the place. Indeed. I see that my time is out. I'm happy to answer any other questions. All right. Thank you very much. We ask the court to affirm the preliminary injunction. Okay. Back to you, Mr. Pinker. Mr. Pinker, let me say that if I were not a judge, I would surely be for Southwest Airlines. Now, you may not know the history, but I was a Supreme Court judge that saved the funding for the first three planes, and Herb Kelleher will tell you that if it hadn't been for me, there wouldn't be any Southwest Airlines. But I'm a judge, and you know what I raised? I'm just one judge. Two over here are smarter than me. What is the answer to my problem? I have said that it looks to me like the city has made the decision, and it is what, in this case, was ordered by the trial court. They're here affirming it. They said so in the brief they affirmed it. They've agreed to it. Fine. With respect, Your Honor, the city has stated they want an injunction. They have also stated that they have absolutely no opinion on what side it should favor or what terms should be included in that injunction. So fundamentally, in answer to Your Honor's question, they have not ordered accommodation, which would be a prerequisite to any finding that Southwest has breached the agreement. Absent an instruction by the contractual counterparty of the city telling us to accommodate, we cannot be in breach, and thus there is no likelihood of success on the merits or irreparable harm. I hear you. Does the 2006 agreement say that they have to go through some sort of a formal declaration? I just thought that the airport development department of the city decides. The 2006 agreement approved the then existing scarce resource provision of the lease, which is substantially identical to the scarce resource provision in the current lease. That provision requires that the city order accommodation as a prerequisite to there being any obligation by Southwest to do so. And the city has still, as of today, not made any such order. They have simply said they want an injunction of some type or form. They've taken no position on what it should look like. And fundamentally, we've argued that the city's claims are not ripe and that they're lacking a condition precedent. But at a bare minimum, the city cannot obtain injunctive relief on a position it does not espouse. They have not come into court and said they think the lease should read in the manner that Delta suggests. And to the contrary, their only fact witness on the subject testified that he reads the lease the same way as Southwest, which is that Southwest should have priority and that Southwest can expand its schedule to the detriment of an accommodated party and must simply do so over time. I hear you and I won't stay and cement entirely, but the introduction to their brief says we affirm the judgment of the district court. I believe it further says affirm an injunction and it would be affirmed by relief for Southwest as well. Not at the introduction of the brief. I believe it's in the conclusion, if not in the introduction, and I can certainly find that page for the court. The city certainly, and I would submit repeatedly, says it is agnostic with regard to the type of relief. It simply wants an injunction for somebody. And I submit that's not enough to trigger or to meet the likelihood of success or the irreparable harm elements. As to Delta, Delta simply is trying to short-circuit or end-run WARA at this point in time and the compromises contained therein. It is unhappy with those compromises, but that dissatisfaction and grievance doesn't give it a claim here. To have a claim in this case, they must show that they're a third-party beneficiary and they cannot do so. The court asked me questions, Judge Davis did, about a preexisting condition or preexisting obligation, and I would cite Taw's case as well as Allen for the notion that there must be a preexisting obligation separate from the contract being sued upon. I would also cite to the court the notion that there must establish a creditor-beneficiary relationship, which counsel conceded in his argument. There is no creditor-beneficiary relationship here. The grant assurances that they have argued are agreements between the city and the government. They are not obligations owed to Delta. I'm happy to answer questions. Thank you. Thank you, counsel. We have your case.